IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| M&S GRADING, INC., | ) | |
| | ) | CASE NO. BK02-81632 |
| Debtor(s). | ) | A04-8102 |
| THE CIT GROUP/EQUIPMENT FINANCING, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CH. 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| M&S GRADING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM

Trial was held in Omaha, Nebraska, on October 3, 2005. Charles Benish appeared for the plaintiff, James Killips appeared as trustee, and T. Randall Wright and Brandon Tomjack appeared for the debtor/defendant. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A).

In March of 1999, the plaintiff, an entity that is in the business of financing and/or leasing equipment for commercial use, entered into a lease agreement whereby it as lessor leased to Fehrs Nebraska Tractor & Equipment Co. ("Fehrs") equipment identified as follows: Etnyre Model PRTN50TD3-T1 Lowboy Trailer and Etnyre Flip Axle (hereinafter "equipment"). Under Nebraska law, the equipment is subject to the certificate of title act. The plaintiff has at all times had possession of the title and the title is in the name of the plaintiff. As part of the transaction, the plaintiff filed a protective financing statement under the Nebraska Uniform Commercial Code.

In September of 2000, the lessee, Fehrs, contracted with the debtor to sell the equipment to the debtor. Fehrs executed a bill of sale, and the debtor executed a promissory note promising to pay the full amount of the sales price on an installment basis (Filing No. 38 & No. 39). It does not appear that Fehrs retained a security interest in the equipment.

As part of the transaction, Fehrs did not deliver to the debtor the certificate of title because it did not have a certificate of title and did not have a right under its lease agreement with the plaintiff to request a certificate of title. At the time of the transfer to the debtor, Fehrs had not made all payments under the lease and the lease term had not expired.

Shortly after the transfer, Fehrs went out of business. The plaintiff received no further payments under the lease and was not made aware of the debtor's claim of ownership in the equipment until late 2003.

The debtor filed a Chapter 11 bankruptcy in May of 2002 and listed the equipment as property of the bankruptcy estate. The bankruptcy case has been converted to a Chapter 7 case.

The plaintiff, once it realized that the debtor had possession of the equipment and claimed an ownership interest in the equipment, made demand upon the debtor for turnover.  The debtor declined and the plaintiff brought this adversary proceeding to obtain turnover of the equipment.

There seems to be no dispute concerning the facts as described above.  The dispute is a question of law.  The plaintiff asserts that it is the owner of the equipment, that it did not consent to a sale or transfer of the equipment to the debtor, and that Fehrs, as lessee, had no legal authority to transfer any interest of the plaintiff in the equipment to the debtor.  It cites as statutory authority for its position Nebraska Uniform Commercial Code § 2A-305.  That statute describes the interest that a buyer of equipment from a lessee obtains as a result of the transaction.  Under section 2A-305(1), such a buyer generally receives only the interest that the lessee had and takes subject to the existing lease contract.  An exception to that general provision is found at section 2A-305(2).  That section states:

> A buyer in the ordinary course of business . . . from a lessee who is a merchant dealing in goods of that kind to whom the goods were entrusted by the lessor obtains, to the extent of the interest transferred, all of the lessor's and lessee's rights to the goods, and takes free of the existing lease contract.

That section, standing alone, appears to permit a lessee who also happens to be a merchant dealing in the equipment to transfer to a buyer in the ordinary course of business all of both the lessee's and lessor's rights and interests in the equipment.

Section 2A-305(3) is an exception to the exception described in section 2A-305(2).  Section 2A-305(3) states:

> A buyer . . . from the lessee of goods that are subject to an existing lease contract and are covered by a certificate of title issued under a statute of this state . . . takes no greater rights than those provided both by this section and by the certificate of title statute.

In other words, even if the lessee is a merchant, and even if the buyer is a buyer in the ordinary course of business, the interest transferred to the buyer is limited by the terms of the certificate of title statute.

The Nebraska certificate of title act, at section 60-105, provides that:

> (1) No person, except as provided in section 60-110, acquiring a motor vehicle, commercial trailer, semitrailer or cabin trailer from the owner thereof, whether such owner is a manufacturer, importer, dealer, or otherwise, shall acquire any right, title, claim, or interest in or to such motor vehicle, commercial trailer, semitrailer, or cabin trailer until he or she shall have had delivered to him or her . . . a certificate of title or a manufacturer's or importer's certificate . . . .  No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, commercial trailer, semitrailer, or cabin trailer sold or disposed of . . . unless there is compliance with this section.

Neb. Rev. Stat. Ann. § 60-105 (LexisNexis 2002).

In this case, although there is some argument by the debtor that the "lease" relied upon by the plaintiff is not a true lease but is a disguised security interest, a comparison of the terms of the lease (Filing No. 32) with the provisions of Nebraska Uniform Commercial Code § 1-201(37), the provision that differentiates a security interest from a true lease, leads me to conclude that the master lease has all of the attributes of a true lease and I so find.

The plaintiff has argued that the debtor is not a buyer in the ordinary course of business and therefore cannot qualify for the exception noted in section 2A-305(2).  However, section 2A-103(1)(a) defines a "buyer in ordinary course of business" as

> . . . a person who in good faith and without knowledge that the sale to him or her is in violation of the ownership rights or security interest or leasehold interest of a third party in the goods, buys in ordinary course from a person in the business of selling goods of that kind . . . . "Buying" may be for cash or by exchange of other property or on secured or unsecured credit . . . .

Here, the testimony of an officer of the debtor is that he purchased the equipment on behalf of the debtor, for use in the business operations of the debtor, and that he had no knowledge that Fehrs was only a lessee and not an owner.  He had observed the equipment on the premises of Fehrs and being used by Fehrs in the delivery of other equipment from Fehrs to various job sites.  I conclude that the debtor, under the circumstances of this case, is a buyer in the ordinary course of business.

It appears that the plaintiff, relying upon section 2A-305(3) and having continuing possession of a certificate of title for the equipment, trumps the debtor which relies on section 2A-305(2).  There is no Nebraska case law interpreting this section of the Uniform Commercial Code.  However, the debtor asserts that the Nebraska Supreme Court's decision in Dugdale of Nebraska, Inc. v. First State Bank, 227 Neb. 729, 420 N. W.2d 273 (1988), has interpreted the Nebraska U.C.C. § 2-403, which arguably is analogous to the lease statute, section 2A-305, as overriding the requirements of the Nebraska certificate of title act.  Section 2-403(2) states:

> Any entrusting of possession of goods to a merchant for purposes of sale who deals in goods of that kind gives him or her power to transfer all rights of the entruster to a buyer in ordinary course of business.

Section 2-403(3) defines "entrusting" as

> . . . any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law.

In Dugdale, the bank financed a retail dealer of Ford automobiles.  The bank retained possession of the manufacturer's certificate of origin and/or certificate of title to vehicles placed in inventory of the dealer.  Dugdale purchased a new vehicle from the dealership and paid for it.  The dealership did not deliver the appropriate funds to the bank, and therefore did not receive either the manufacturer's certificate of origin or a title.  It therefore could not deliver title to the buyer.  The bank, not having received any funds, refused to deliver title to Dugdale.

Dugdale sued the bank and claimed ownership rights by virtue of having paid good and valuable consideration to the dealer and having taken possession of the vehicle from the dealer. The bank claimed ownership of the vehicle by virtue of its possession of the manufacturer's certificate of origin and possession of the certificate of title to the vehicle.  The district court determined that since Dugdale did not have a certificate of title, it had no interest in the vehicle because it was not in compliance with the Nebraska certificate of title act.

The Supreme Court first restated its position that the certificate of title act is the exclusive means of transferring title, and a purchaser who takes possession of a motor vehicle without receiving a certificate of title acquires no ownership of the vehicle. 227 Neb. at 732.

The Supreme Court found that, pursuant to the terms of section 2-403, the bank had entrusted the vehicle to the dealer for purposes of sale:

> [A] dealer having the authority to expose vehicles for sale in the ordinary course of business, pursuant to § 2-403, binds his financier to deliver title to any vehicle so sold, whether or not the dealer remits the proceeds to his financier.  A buyer in the ordinary course of business in this limited circumstance is not within the intended purview of § 60-105.

227 Neb. at 735-36.

There is a significant difference between the facts of this case and the facts in the Dugdale case.  There is also a difference between the statutory language of section 2A-305 and section 2-403.  First, in Dugdale, the court found that the bank entrusted the vehicle to the dealer for purposes of sale.  Section 2-403(2) provides that "entrusting of possession of goods to a merchant for purposes of sale who deals in goods of that kind gives him or her power to transfer all rights of the entruster to a buyer in ordinary course of business." Section 2-403(3) provides that "'entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery . . . ."

In this case, however, even though it is correct to say that the plaintiff "entrusted" the equipment to Fehrs, a "merchant dealing in goods," the plaintiff did not entrust the equipment to Fehrs for the purpose of sale but entrusted the equipment for use in the business of Fehrs, pursuant to a lease.  The lease itself does not permit transfer of the equipment and assumes by its terms that the equipment will be used in the business of the lessee.

The Dugdale court restricted its holding to the factual circumstances in the Dugdale transaction.  To repeat, the court stated:

> We hold that a dealer having the authority to expose vehicles for sale in the ordinary course of business, pursuant to § 2-403, binds his financier to deliver title to any vehicle so sold, whether or not the dealer remits the proceeds to his financier. A buyer in the ordinary course of business in this limited circumstance is not within the intended purview of § 60-105.

227 Neb. at 735-36.  It is logical to infer from that language that other than within the limited circumstances of Dugdale, § 60-105 does in fact apply.

-4-

This is such a case.  Section 2A-305(3) specifically incorporates the certificate of title act and provides that a buyer from the lessee of equipment which is covered by the certificate of title statute takes no greater rights than those provided by the certificate of title statute. To assume that Dugdale, which was not a lease case and which was not decided under a statutory provision that specifically makes the certificate of title act applicable to lease cases, is binding precedent would require the court to ignore a specific provision of the statute.

Dugdale was decided in 1988.  Section 2A-305, which specifically makes reference to the applicability of the certificate of title act, became law in Nebraska in 1991.

I conclude, as a matter of law, that the debtor, which did not obtain a certificate of title to the equipment, took no greater interest in the equipment than Fehrs, the lessee, and that the plaintiff's ownership interest is superior to the interest claimed by the debtor.  Therefore, judgment will be entered in favor of the plaintiff and against the debtor/defendant.  Turnover is ordered.

Separate judgment to be entered.

DATED:   December 21, 2005

BY THE COURT:

/s/ Timothy J. Mahoney
Chief Judge

Notice given by the Court to:
        *Charles Benish
        James Killips
        Brandon Tomjack
        T. Randall Wright
        U.S. Trustee

Movant (*) is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.